IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLEN R. TURK,

      Petitioner,                    No. CIV S-07-1082 FCD CHS P

      vs.

CALIFORNIA BOARD OF PAROLE HEARINGS,

      Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

I.     INTRODUCTION

      Petitioner Allen Turk is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Turk challenges the December 12, 2005, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for parole.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

II.    FACTUAL AND PROCEDURAL BACKGROUND

    A.    Facts

      The Board recited the facts of Turk's commitment offense as follows:

> PRESIDING COMMISSIONER FARMER: In April of 1985, defendant was an inmate at Folsom State Prison serving a life sentence for second-degree murder.  The defendant was confined

1

to a segregated housing unit, otherwise known as the SHU, where gang members and violent prisoners are housed. On May 21st, 1985, Gary Bradley (phonetic), [a] prison correctional officer, was delivering canteen items to the SHU inmates. As he approached defendant's cell, defendant complained that his canteen items were being crushed by the containers. Having verified that none of the defendant's items were damaged, Bradley retorted it was not a problem, and he told the defendant not to worry. Defendant became upset, cursing Bradley and [he] refused delivery of his canteen items. Both Bradley and defendant became vocally agitated and exchanged profanities. Defendant demanded Bradley open the cell door so that defendant could, quote, "kick Bradley's ass," closed quote. Defendant repeatedly demanded to see the sergeant, but Bradley did not feel the incident warranted the sergeant's intervention. The next morning pursuant to defendant's request, the defendant was allowed to meet with Sergeant Washington. Bradley was present at the meeting. During the initial phase of the meeting, defendant was upset and business-like, complaining about Bradley's behavior on the proceeding day. As the conversation continued, defendant became more agitated, raising his voice and speaking emphatically. At one point, defendant violently jumped around in his chair. At the end of the conversation, defendant slammed the desk with his hand and jumped up as if he was ready to leave. He turned again, glared at Bradley, who was standing by the door. Defendant went for Bradley's neck. Bradley tucked his chin down, but defendant grabbed Bradley and bit his cheek and ear. A melee ensued, and it required the combined efforts of Washington, Bradley, and a third officer, Takahashi, T-A-K-A-H-A-S-H-I, to subdue the defendant. During the struggle, Takahashi saw blood in defendant's mouth. Plastic surgery was required to repair the missing skin and tissue in Bradley's cheek. As a result of the attack, Bradley suffered a gash to his cheek three inches long by one inch in size. Defendant also bit off part of Bradley's right ear lobe, leaving the right ear about one-half of an inch shorter than the left ear. Defendant admitted having abnormally long sharp teeth which periodically required filing. Defendant acknowledged having been in an argument with Bradley but claimed the meeting in Washington's office was a, quote, "set up," closed quote. He claimed he only defended himself against the offensive tactics of Bradley.

/////

Answer, Exhibit A at 97-99.

A jury found Turk guilty of assault and he was sentenced to life without the possibility of parole for nine years under California Penal Code section 4500.[1] Id. at 19. After

---

[1] California Penal Code § 4500 states:
   Every person while undergoing a life sentence, who is sentenced to state

2

nine years Turk was eligible for parole. On December 12, 2005, the Board held Turk's Subsequent Parol Consideration Hearing. Id. at 84. At the conclusion of that hearing the Board found Turk unsuitable for parole. Id. at 141.

B. Habeas Review

Turk filed a petition for writ of habeas corpus in the Sacramento County Superior Court on or around April 26, 2006. Id. at 31-55. That petition was denied in a reasoned opinion on June 15, 2006. Id. at 19-21. Turk then filed a motion for reconsideration which was denied on July 26, 2006, in another reasoned opinion that supplemented the court's original opinion.[2] Id. at 26.

On September 25, 2006, Turk filed a petition in the California Court of Appeal, Third Appellate District. Answer, Ex. B at 4. That petition was summarily denied on October 12, 2006. Id. at 2. Turk then filed a petition in the California Supreme Court on November 6, 2006, which was summarily denied on May 9, 2007. Answer, Ex. A at 2-3.

Turk finally filed his first federal habeas petition on June 6, 2007. That petition was dismissed with leave to file an amended petition, which was filed on March 18, 2008.

III. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860,

---

> prison within this state, and who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole. The penalty shall be determined pursuant to the provisions of Sections 190.3 and 190.4; however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, the punishment shall be imprisonment in the state prison for life without the possibility of parole for nine years.

[2] Because Turk failed to attach the hearing transcripts to his original petition, but did attach them to his motion for reconsideration, the state court's order denying his motion for reconsideration contains a more detailed analysis of the Board's decision.

861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

IV.  DISCUSSION OF PETITIONER'S CLAIMS

   A.  Due Process

      1)  Description of Claim

Turk argues that the Board's has "repeatedly refused to afford him the state created right given California prisoners serving life terms . . . pursuant to In re Rodriguez . . . ."

4

1 and has violated his right to due process. First Amended Petition at 3-4.

    2)  State Court Opinion

    The Sacramento County Superior Court rejected this claim stating:

> It is questionable whether <u>Rodriguez</u> and <u>Wingo</u> remain in effect, after the 1977 enactment of the Determinate Sentencing Law. Even if they have any remaining effect, however, petitioner does not establish entitlement to relief under it at this time. His maximum punishment is that of the maximum of his sentence, which is life imprisonment.

/////

Answer, Ex. A at 19-20.

    3)  Applicable Law And Discussion

    California law provides that where the Board fails to promptly fix a primary term, "the court will deem it to have been fixed at the maximum" by default. <u>In re Rodriguez</u>, 14 Cal.3d 639, 654 (Cal. 1975); <u>see</u> <u>also</u> <u>In re Bobby Williams</u>, 53 Cal.App.3d 10, 17 (1975) (quoting <u>People v. Wingo</u>, 14 Cal.3d 169, 182 (Cal. 1975) for the proposition that where the Board omits or declines to fix the term of a prisoner serving an indeterminate sentence, the maximum term will be deemed to be the fixed term). Furthermore, California law entitles Turk to a base term only <u>after</u> he is found suitable for parole. <u>In re Stanworth</u>, 33 Cal.3d 176, 183 (Cal. 1982) (holding that under both the indeterminate and determinate sentencing law, a life prisoner must first be found suitable for parole prior to setting a parole date). Since Turk was deemed unsuitable for parole, the Board did not violate the law by not setting a base term or parole date. <u>See</u> Cal. Code. Regs., tit. 15, §§ 2401, 2402(c); <u>see</u> <u>also</u> <u>Connor v. Estelle</u>, 981 F.2d 1032, 1033 (9th Cir. 1992).

    With respect to Turk's due process argument, the Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.

1 Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v.
2 Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

3       A protected liberty interest may arise from either the Due Process Clause of the
4 United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).
5 The United States Constitution does not, of its own force, create a protected liberty interest in a
6 parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).
7 However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that
8 parole release will be granted' when or unless certain designated findings are made, and thereby
9 gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz
10 v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). In this regard, it is clearly established that
11 California's parole scheme provides prisoners sentenced in California to a state prison term that
12 provides for the possibility of parole with "a constitutionally protected liberty interest in the
13 receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of
14 the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v.
15 Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910,
16 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting
17 Greenholtz, 442 U.S. at 12)). Accordingly, this court must examine whether the deprivation of
18 petitioner's liberty interest in this case violated due process.

19       It has been clearly established by the United States Supreme Court "that a parole
20 board's decision deprives a prisoner of due process with respect to this interest if the board's
21 decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing
22 Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing
23 McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

24       "The 'some evidence' standard is minimally stringent," and a decision will be
25 upheld if there is any evidence in the record that could support the conclusion reached by the
26 fact-finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d

1  703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

2  However, "the evidence underlying the [ ] decision must have some indicia of reliability."

3  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). See also Perveler v.

4  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence"

5  standard is satisfied does not require examination of the entire record, independent assessment of

6  the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The

7  question is whether there is any reliable evidence in the record that could support the conclusion

8  reached. Id.

9  In finding Turk unsuitable for parole, the Board relied upon: a) the circumstances

10 of the commitment offense, b) his previous record of violence, c) his institutional behavior, d)

11 his psychological report, and e) his lack of adequate parole plans.

12                a)     Circumstances of The Commitment Offense

13        With respect to the circumstances of the commitment offense the Board stated:

> In looking at the offense, we find that the victim was abused,
> defiled, and mutilated during the course of the events. It was
> carried out in a manner which demonstrated an extremely callous
> disregard for human suffering and the motive was trivial in that
> there are ways to address your concerns within the institution
> which were not utilized at that time.

17 /////

18 Answer, Ex. A at 141-42.

19        The circumstances of the commitment offense are one of fifteen factors relating to

20 an inmate's unsuitability or suitability for parole under California law. Cal. Code. Regs., tit. 15,

21 § 2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated

22 that:

> A prisoner's commitment offense may constitute a circumstance
> tending to show that a prisoner is presently too dangerous to be
> found suitable for parole, but the denial of parole may be
> predicated on a prisoner's commitment offense only where the
> Board can "point to factors beyond the minimum elements of the
> crime for which the inmate was committed" that demonstrate the
> inmate will, at the time of the suitability hearing, present a danger

to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

The relevant inquiry however "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor." In re Lawrence, 44 Cal.4th 1181, 1221 (Cal. 2008); In re Dannenberg, 34 Cal. 4th at 1070-71.

Turk "went for" the victim's neck, biting the victim's cheek and ear. Answer, Ex. A at 98. The bite drew blood and plastic surgery was required to repair the damage. Id. The victim was left with a three inch by one inch scar on his cheek and lost a portion of his left ear, which Turk bit off. Id. at 99. Turk does not deny the attack but instead claims that the victim precipitated it by striking him in the face. Id. Turk states, "[h]e hit me in the face. It triggered a reaction to defend myself, and I done just that." Id. at 102.

Even if Turk's self-defense claim were true, and it does not appear so, biting and scaring the victim would not be an equal response of force to the victim's punch. Turk's actions left the victim permanently disfigured. The attack was barbaric and without any possible justification.

/////

The Board's conclusions regarding the circumstances of the commitment offense are supported by evidence. More importantly, the identified facts were probative to the central issue of petitioner's then current dangerousness when considered in light of the full record before the Board. That record included petitioner's previous record of violence, his poor institutional behavior, his psychological report, and his lack of adequate parole plans.

### b) Previous Record of Violence

The Board cited Turk's previous record of violence as a factor supporting its finding of unsuitability. Answer, Ex. A at 142. The Sacramento County Superior Court found some evidence to support that conclusion in its order on Turk's motion for reconsideration. Answer, Ex. A at 27.

Under California law, a previous record of violence is one factor that can indicate unsuitability. Cal. Code. Regs., tit. 15, § 2402 (c)(2). A previous record of violence is found where "[t]he prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." Id.

According to the Board Turk had prior arrests or convictions for aggravated assault, battery, strong-armed robbery, assault with a deadly weapon, assaulting a police officer, armed robbery and robbery.[3] Answer, Ex. A. at 106-08. Turk was convicted of rape, found not guilty by reason of insanity for murder and had a separate murder charge that resulted in a conviction for voluntary manslaughter. Answer, Ex. A. at 106-08.

Prior convictions for rape and murder are evidence of a previous record of violence. The Board's conclusion regarding Turk's previous record of violence is supported by evidence.

/////

---

[3] Some counts were dismissed due to Turk's "mental status and/or unavailability." Answer, Ex. A at 108.

        c)      <u>Institutional Behavior</u>

In support of its finding of unsuitability the Board cited Turk's institutional behavior, describing it as "replete with disciplinary involvements . . . ." Answer, Ex. A at 142. The Sacramento County Superior Court found some evidence to support that conclusion in its order on Turk's motion for reconsideration. Answer, Ex. A at 27.

Under California law, institutional behavior that evidences "serious misconduct" at any time is a circumstance tending to show unsuitability. <u>See</u> Cal. Code Regs. tit. 15, § 2402(c)(6). At the time of the hearing Turk's classification score was 115 and his custody level was "medium-AR."[4] Answer, Ex. A at 118. It appears that Turk had roughly twenty-two 128s and seventeen 115s.[5] <u>Id</u>. at 119. He had a 115 in 2003 for destruction of state property and another in 1999 for refusing a cellmate. <u>Id.</u>

The Board's conclusion that Turk's institutional behavior evidences instances of serious misconduct is supported by evidence.

        d)      <u>Psychological Report</u>

In support of its finding of unsuitability the Board noted that Turk's August 4, 2004, psychological report was unfavorable. Answer, Ex. A at 143. Under California law, the Board is authorized to consider "any other information which bears on the prisoner's suitability for release." Cal. Code. Regs., tit. 15, § 2402(b).

At the time of the 2004 report Mr. Turk had not sought or received mental health services. Answer, Ex. A at 123. The report noted that Mr. Turk had a history of psychiatric hospitalizations related to substance abuse and/or criminal activity and had been hospitalized in

---

[4] A classification score reflects the security control needs on an inmate, where higher scores correspond to greater needs. <u>See</u> 15 Cal. Code Regs. § 3375(d). 0 is the lowest possible classification score. <u>See</u> Cal. Code. Regs., tit. 15, § 3375.1(a).

[5] A 128 is issued when similar minor misconduct recurs after verbal counseling or if documentation of minor misconduct is needed. 15 Cal. Code Regs. § 3312(a)(3). A 115 "Rules Violation Report" documents misconduct "believed to be a violation of law or [that] is not minor in nature ." Cal. Code. Regs., tit. 15, § 3312(a)(3).

two state hospitals.  Id.  While at one of those hospitals he was diagnosed as a paranoid schizophrenic.  Id.  The 2004 report found that Mr. Turk had "poor insight and judgement," and that his reliability appeared poor because his statements to the interviewer did not always match the information in his file.  Id.  The report concluded that Mr. Turk "would pose an unpredictable degree of threat to the public if released from prison at this time."  Id. at 126.  The Board found that conclusion "charitable in light of his history."  Id. at 143.

The Board's conclusion that the 2004 psychological report indicates unsuitability is supported by evidence.

### e) Parole Plans

The Board found that Turk lacked "realistic parole plans in that he indicates what he is going to do" without providing documentation to support those plans.  Id.  Turk's plans consisted of returning to his deceased parent's home in Houston, because he "cannot stand . . . what happened to [him] out here, and [he doesn't] want to ever experience the injustice that [he] has suffered . . . ." again.  Id. at 113.  Turk believes his parent's home belongs to him and that he could obtain work as a truck driver.  Id. at 114-15.  Turk lacked any documentation to support these plans.

The Board's finding that Turk's parole plans were inadequate is supported by the record.

### 4) Conclusion

The facts of Turk's commitment offense were probative to his current dangerousness when considered in light of the full record before the Board.  That record included Turk's previous record of violence, his poor institutional behavior, an unsupportive recent psychological report and his lack of adequate parole plans.

Turk had an extensive record of prior criminal conduct and violence before his attack on Bradley.  At a minimum, he was responsible for the rape of one person and the deaths of two others, though he was found not guilty by reason of insanity for one of those deaths.

1   While incarcerated for manslaughter he attacked Bradley in a manner so barbaric
2   that it reads as if written for a fictional villain.  Turk had numerous instances of serious
3   misconduct while incarcerated, some of which occurred well after his attack on Bradley and
4   shortly before the hearing.  Turk's most recent psychological evaluation was not supportive of
5   his release and he lacked reliable parole plans.
6   Based on this record there was evidence to support the Board's conclusion that at
7   the time of the hearing Turk was unsuitable for parole.  The state court's rejection of this claim
8   was neither contrary to, nor an unreasonable application of, clearly established federal law and
9   Turk is not entitled to relief on this claim.

    B.    <u>Cruel And Unusual Punishment</u>

          1)    <u>Description of Claim</u>

12   Turk argues that the Board's failure to set the maximum term of his confinement
13  at less than life requires him to serve a life sentence which is disproportionate to his offense and
14  is cruel and unusual punishment. First Amended Petition at 3.  In support, Turk provides a list of
15  inmates who were convicted of murder and subsequently released on parole. <u>Id.</u> at 52-55.
16  Respondent argues that this claim is untimely under AEDPA and should therefore be denied.
17  Answer at 6.
18   At the time of the assault Turk was of course already serving life imprisonment
19  for manslaughter.  That sentence preceded the assault which resulted in an additional sentence of
20  nine years to life.  It appears Turk is attempting to attack both his sentence of life in prison for
21  the assault and the Board's failure to set a date for his release.

          2)    <u>State Court Opinion</u>

The Sacramento County Superior Court reject this claim stating:

> Nor at this late date should he be able to now challenge that
> maximum as constituting cruel and unusual punishment.  Rather,
> he should have done so in an appeal from the judgment, or in a
> timely filed habeas corpus petition challenging the judgment on
> cruel and unusual punishment grounds.  At this point in time, years

> after the times for appeal and timely habeas have passed, such a claim should be barred . . . . Nor does it appear, in any event, that a life sentence for an already-life prisoner who committed an assault in prison on a guard is cruel and unusual punishment, under either the Eighth Amendment . . . or the California Constitution . . . . Nor has petitioner shown that the particular circumstances of his crime render a maximum sentence of life imprisonment cruel or unusual....

/////

Answer, Ex. A at 20.

### 3) Applicable Law And Discussion

To the extent Turk is attempting to attack his sentence for the assault as disproportionate and cruel and unusual, on April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes various requirements on petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) overruled on other grounds by Lindh v. Murphy, 521 U.S. 320.

This petition was filed on March 8, 2008, and is subject to AEDPA, which imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). However, because Turk has failed to raise a colorable claim for federal habeas relief in the interest of judicial economy it is preferable to proceed to the merits of his claim. See Van Buskirk v. Baldwin, 265 F.3d 1080, 1083 (9th Cir. 2001) (holding that court may properly deny petition on merits rather than reaching "complex questions lurking in the time bar of the AEDPA").

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring)). "The threshold determination in the eighth amendment proportionality analysis is whether [petitioner's] sentence was one of the rare cases in which a ... comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." United

States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992), cert denied, 506 U.S. 858 (1992) (citations and quotations omitted; emphasis added); see also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) ("[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case"); Rummel v. Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

A comparison of Turk's crime and his sentence does not lead to an "inference of gross disproportionality." See, e.g., Harmelin (life without possibility of parole for possession of 672 grams of cocaine); United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir. 1991) (life without possibility of parole for possession of cocaine with intent to distribute); Terrebonne v. Butler, 848 F.2d 500, 507 (5th Cir. 1988), cert. denied, 489 U.S. 1020 (1989) (life without possibility of parole for 21-year-old heroin addict who delivered packets of heroin to an undercover officer); Holley v. Smith, 792 F.2d 1046, 1051-52 (11th Cir. 1986), cert. denied, 481 U.S. 1020 (1987) (life without possibility of parole for recidivistic robber). Indeed the Supreme Court affirmed sentencing a defendant who committed his crime at the age of 17 to life without the possibility of parole. See Roper v. Simmons, 543 U.S. 551, 560 (2005). Additionally the Andrade decision also forecloses Turk's Eighth Amendment claim.

In Andrade, the Supreme Court acknowledged: "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." Lockyer v. Andrade, 538 U.S. at 72. Because of this lack of clarity, the Andrade Court found not unreasonable a California court's affirmance of a sentence of 25 years to life for petty theft with a prior theft-related conviction. Id. The same lack of clarity prevents a conclusion here that the California courts' refusal to interfere with petitioner's sentence was "contrary to" or an "unreasonable application of" "clearly established Federal law as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d).

To the extent Turk is attacking the Board's failure to set his maximum term of confinement at something less than life, in California, a prisoner does not have a vested right to the determination of his sentence at less than the statutory maximum. In re Dannenburg, 34 Cal.4th 1061. The indeterminate sentence is, effectively, a sentence for the maximum term "subject to the ameliorative power" of the board to set a lesser term. Id. at 1098. The state need not evaluate a prisoner's period of incarceration under "standards of term uniformity" if it has found that the prisoner presents a continuing public danger. Id. Nothing in United States Supreme Court jurisprudence holds otherwise. See Carey v. Musladin, 549 U.S. 70, 77 (2006) (stating that, where Supreme Court precedent gives no clear answer to the question presented, it "cannot be said" that the state court unreasonably applied "clearly established" federal law). The Board therefore had not reached a point where it needed to fix a term and set a parole release date because it found that Turk presented a continuing public danger.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law and Turk is not entitled to relief on this claim.

C. <u>Hearing Transcripts</u>

1) <u>Description of Claim</u>

Turk claims that the transcripts from the hearing are defective and inconsistent with the cassette recording. First Amended Petition at 5, 59.

2) <u>Applicable Law And Discussion</u>

Turk does not allege how the transcripts are defective and simply asserts that the "transcriber's omission of accurately printing each word stated by petitioner has deprived petitioner of the right to an impartial hearing." Id. at 59. That argument is vague and conclusory and should be rejected on that basis. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'").

15

Turk has not presented a cognizable federal issue and is not entitled to relief on this claim.

  D)  <u>District Attorney</u>

    1)  <u>Description of Claim</u>

Turk argues that the District Attorney present at his hearing was part of an "ongoing conspiracy perpetuated by the court appointed trial lawyer and the deputy district attorney [and] the judge" from his 1986 trial. First Amended Petition at 5. He argues that each of these individuals have agreed to deprive him of his constitutional rights based on their prejudice of African-American men. <u>Id.</u> at 60.

    2)  <u>Discussion</u>

Turk's only coherent argument is that the District Attorney at his hearing attempted to enter "inaccurate information into the record." <u>Id.</u> While discussing Turk's prior convictions the District Attorney stated that he believed Turk had been convicted of child molestation. Answer, Ex. A at 108. After some discussion, Presiding Commissioner Eng confirmed that Turk's rap sheet did not "indicate any indication of child molestation." <u>Id.</u> at 108-11.

It is not clear what, if any, clearly established federal law Turk is alleging was violated by the District Attorney's apparent mistake given that the presiding commissioner clearly rejected the molestation claim. Further, the remainder of Turk's argument is vague and conclusory and should be rejected on that basis. <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) (quoting <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'").

Turk has not presented a cognizable federal issue and is not entitled to relief on this claim.

/////

/////

1       Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 3, 2009

                        */s/ Charlene H. Sorrentino*
                        CHARLENE H. SORRENTINO
                        UNITED STATES MAGISTRATE JUDGE